### JOHN MATULA *vs.* MAX ROSENFIELD.

First Judicial District, Hartford, January Term, 1922.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, JS.

Where in an action for damages for an alleged wrongful refusal of the
  defendant to accept tobacco contracted for, the jury could not
  reasonably have found otherwise than that the plaintiff failed to
  make reasonable efforts to prepare his tobacco for delivery pur-
  suant to his agreement, the trial court exercised a wise discretion
  in setting aside a verdict for the plaintiff.

  Submitted on briefs January 3d—decided March 8th, 1922.

  ACTION to recover damages for the alleged wrongful
refusal of the defendant to accept a part of a crop of
tobacco pursuant to his agreement, brought to the
Superior Court in Hartford County and tried to the
jury before *Webb, J.;* verdict for the plaintiff to re-
cover $995, which the trial court set aside, and from
this action the plaintiff appealed.  *No error.*

  *Henry H. Hunt,* for the appellant (plaintiff).

*Albion B. Wilson* and *Ralph M. Grant*, for the appellee (defendant).

CURTIS, J.   This is an appeal from the action of the trial court in setting aside a verdict in favor of the plaintiff.   If upon the evidence presented, which is made a part of the record, the jury could reasonably have found the issues for the plaintiff, the verdict should have been permitted to stand.

The plaintiff alleges the sale on November 26th, 1919, of his crop of tobacco of that year, to the defendant at thirty-five cents a pound in the bundle, and that the defendant has neglected to receive the tobacco.

The defendant denies the allegations of the complaint, except as admitted in a special defense.   In the special defense he alleges that the parties entered into the following written contract:   "Hartford, Conn., Nov. 26, 1919.   This is to certify that We Max Rosenfield & Co. have this day bought of John Matula and that I John Matula have this day sold to Max Rosenfield & Co. crop of 1919 tobacco consisting of about 8 acres—bundles, to be delivered at 65 Temple Street, Hartford, Conn.   To be delivered as said Rosenfield & Co. shall direct, free from all damage, at thirty-five (35) cents per pound in bundle.   No tobacco received on rainy days.

> "Max Rosenfield & Co.
> "John Matula.
>
> "P. O. Address So. Glastonbury.

"Paid on above contract 400 "; and on December 17, 1919, $100.   And that on January 10th, 1920, the plaintiff delivered 201 bundles of the tobacco, weighing 6,161 pounds, to the defendant at his place of business in Hartford; that he was paid in full for the same; that on January 20th the plaintiff was directed by the defendant to deliver 100 bundles on January 24th; that

the defendant directed the plaintiff to deliver such tobacco as he had hanging in his sheds as soon as it was bundled; that the plaintiff neglected and refused to deliver the 100 bundles although repeatedly requested to do so; that the plaintiff has never delivered or offered to deliver to the defendant the tobacco then hanging in his sheds; that the defendant since January 13th, 1920, has been and now is willing to receive and pay for the tobacco that was hanging in the plaintiff's shed on that date.

The plaintiff, in reply, admits that the agreement as to the tobacco was the written contract alleged by the defendant, and that he delivered 201 bundles of tobacco on January 10th. He alleges that the remaining tobacco of his crop was then hanging in his sheds, and that he took down the tobacco and bundled it for delivery at the earliest possible time, and tendered it to the defendant, and that the defendant refused to accept or pay for it. Other affirmative allegations of the special defense were denied. The defendant denied the affirmative allegations of the reply.

Upon the trial the plaintiff admitted that he had been fully paid for the 201 bundles delivered on January 10th, 1920.

The jury could reasonably have found under the evidence that when, on November 26th, 1919, the written contract was entered into, the plaintiff's crop consisted of about 12,000 pounds of tobacco, unbundled, and hanging in the tobacco sheds of the plaintiff; that the defendant then saw it in that place and condition; that tobacco hanging in sheds cannot be taken down and bundled for delivery without substantial damage to it, unless the weather is warm, muggy or foggy; that such times are occasional and known as "damps" in the tobacco business; that if tobacco is taken down at other times, the leaves crack

and are spoiled; that at the making of the contract the defendant spoke about delivery, and the plaintiff told him he would deliver as soon as he could take down the tobacco; that there were "damps " on November 26th, in December, and on January 10th, 1920, and the plaintiff was during such "damps " reasonably able to prepare all his tobacco in bundles for delivery; that the plaintiff put about 30 pounds of tobacco in a bundle; that the plaintiff delivered 201 bundles, weighing 6,161 pounds, on January 10th, and was fully paid for the same; that the defendant notified the plaintiff by telephone and letter to deliver 100 bundles on January 24th, 1920; that the plaintiff, having failed to take down and bundle his tobacco as he reasonably could have done at the "damps " in November, December and January 10th, was unable to deliver the 100 bundles on January 24th, because of his own neglect, and did not do so; that after January 10th, 1920, there was no "damp " when tobacco could be taken down and bundled until March 12th; that the plaintiff then began to take down and bundle his tobacco; when his tobacco was bundled he called on the defendant on or before March 22d, and notified him that he was ready to deliver the remainder of the crop; the defendant told him that he did not then want his tobacco and would not accept it.

Under the contract it was the duty of the plaintiff to use reasonable efforts to prepare his tobacco for delivery at each occurrence of "damps " after the contract was made. Under the uncontradicted evidence four men could take down three acres of hanging tobacco in one half day. Under the evidence the jury could not reasonably have found otherwise than that the plaintiff could have prepared his tobacco for delivery by reasonable efforts during the "damps " that occurred before the defendant ordered the delivery

of 100 bundles in January. The failure of the plaintiff to deliver 100 bundles of tobacco in January was, therefore, under the evidence, a breach of his contract arising from his own failure to make reasonable efforts to prepare his tobacco for delivery after the contract was made. The plaintiff breached his contract by his failure to deliver 100 bundles of tobacco on January 24th, 1920; therefore the defendant was not required to accept the portion of the crop offered for delivery in March, 1920.

Under the evidence the jury could not reasonably have found the issues for the plaintiff.

The trial court exercised a wise discretion in setting aside the verdict for the plaintiff.

There is no error.

In this opinion the other judges concurred.